# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

GREGORY MILLS, et al., individually and )
on behalf of all others similarly situated, )
                                     )
            Plaintiffs, )
                                     )   Case No. 2:10-CV-04036-NKL
           v. )
                                       )
CITY OF SPRINGFIELD, MISSOURI and )
LASERCRAFT, INC., )
                                     )
           Defendants. )

## ORDER

Before the Court are Motions to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant City of Springfield, Missouri [Doc. # 34] and Defendant Lasercraft, Inc. ("Lasercraft") [Doc. # 36].  While the Court refers herein to Plaintiffs' Second Amended Complaint [Doc. # 25] as cited by the parties, this Order applies equally to Plaintiffs' Third Amended Complaint [Doc. # 44], which joins additional plaintiffs but does not alter the substance of Plaintiffs' allegations.  For the following reasons, the Court GRANTS both motions and dismisses Plaintiffs' federal claims with prejudice.

## I.     Background

Plaintiffs Gregory Mills, et al., bring this action individually and on behalf of all parties who received citations in the City of Springfield after having a photograph taken of their vehicles by a camera mounted above a traffic control device ("red light camera") and who paid fines in connection with those citations under § 106-161 of the City of Springfield

Municipal Code. Section 106-161 of the City of Springfield Municipal Code is titled "Automated traffic control systems" and provides that the owner or operator of a vehicle photographed while in violation of § 106-155 – i.e., running a red light – shall be mailed a written notice of violation giving the individual thirty days to contest the citation. Section 106-161 also provides that where the individual does contest a citation issued in connection with a red light camera photograph, a hearing examiner appointed by the city manager "shall take evidence and determine if the facts support a finding of a violation."

On March 2, 2010, the Missouri Supreme Court ruled that City of Springfield Municipal Code § 106-161 was inconsistent with Missouri law because "[v]iolations of municipal ordinances such as this one cannot be determined administratively but must be heard in a division of the circuit court." *City of Springfield v. Adolph Belt, Jr.*, 307 S.W.3d 649, 650 (Mo. 2010) (citing Mo. Rev. Stat. § 479.010 (Supp. 2009)). "The hearing examiner had no authority to penalize Belt for his car's violation of the red light ordinance." *Id.* at 653.

The following additional facts are taken from Plaintiffs' Second Amended Complaint [Doc. # 25] and are assumed true for purposes of these motions to dismiss. Between 2007 and 2010, Plaintiffs were each cited and fined $100 for alleged red light violations within the City of Springfield after red light cameras photographed their vehicles passing through the city's intersections. Defendant Lasercraft mailed to Plaintiffs notices of violation of the red light ordinance. Without full knowledge of the legal inadequacy of § 106-161, Plaintiffs paid the fines.

Plaintiffs assert the following Counts. Count I alleges that Defendants City of Springfield and Lasercraft wrongfully acquired the $100 fines from Plaintiffs and asks this Court to apply Missouri law to impose a constructive trust to refund the fines paid. Counts II and III request preliminary and permanent injunctive relief but do not state independent claims. Count IV seeks relief pursuant to 42 U.S.C. § 1983, alleging that Defendant City of Springfield, acting under color of state law, violated Plaintiffs' First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, as well as their privileges and immunities under Article IV of the U.S. Constitution. Count V seeks a declaratory judgment under 28 U.S.C. § 2201 finding that § 106-161 violates all the rights alleged to have been violated in Count IV and that the ordinance is void for vagueness and violates the Dormant Commerce Clause. Count VI seeks a declaratory judgment that § 106-161 violated more than a dozen separate provisions of the Missouri Constitution. Count VII alleges that § 106-161 violates Plaintiffs' rights under Article X, § 22 of the Missouri Constitution – known as the Hancock Amendment – because the $100 fine for running red lights constitutes a tax imposed without voter approval and not authorized by law, charter, or self-enforcing provisions of the Missouri Constitution. Count VIII seeks relief pursuant to 42 U.S.C. § 1983, alleging that Defendant Lasercraft, acting under color of state law, violated Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights, as well as their privileges and immunities under Article IV. Count IX claims that Defendant Lasercraft was a "debt collector" as defined in 15 U.S.C. § 1692(a)(6) and that it violated § 1692(d) and (e) by mailing Plaintiffs notices of violation – the natural consequence of which was to harass, oppress, or abuse – and by using false,

deceptive, and misleading means to collect the debt. Count X alleges that Defendant City of Springfield violated Missouri's Open Records Act by failing to properly respond to Plaintiff Gregory Mills's request for records pursuant to Chapter 610 of Missouri Revised Statutes. Count XI alleges that Defendants City of Springfield and Lasercraft defrauded the Plaintiffs by making various representations via direct communication with Plaintiffs, statements of City officials to the media, and in public meetings. Finally, Count XII alleges a claim of "Quasi-Estoppel," asserting that high officials within the city government must be held to their public statements that Defendant City of Springfield would offer refunds to aggrieved motorists.

## II.     Discussion

### A.     Standard for Motion to Dismiss

On a motion to dismiss, the Court construes the complaint liberally, in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a short and plain statement is to provide defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss, a court's evaluation of a plaintiff's complaint is

4

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## B. Section 1983 Claims

### 1. Affirmative Defenses of Waiver and Estoppel

As a preliminary matter, Defendants City of Springfield and Lasercraft both argue that Plaintiffs are barred from asserting all of their constitutional claims by the doctrines of waiver and estoppel. According to Defendants, Plaintiffs' Second Amended Complaint itself shows that (a) Plaintiffs waived their constitutional claims because they had a reasonable opportunity to assert those claims and failed to do so in a timely manner, and (b) Plaintiffs are now estopped from asserting their constitutional claims because, by voluntarily paying the $100 fines, they accepted the findings of the notices of violation.

Plaintiffs argue that Defendants' waiver and estoppel arguments are untimely at this stage in the proceedings because they are affirmative defenses. The burden of pleading and proving such affirmative defenses is on Defendants. *See Stanko v. Patton*, 228 F. App'x 623, 626 (8th Cir. 2007); *Associated Elec. Co-op. v. Sachs Elec. Co.*, No. 86-3336-CV-S-4, 1987 WL 14499, at *4 (W.D. Mo. Jan. 12, 1987) (refusing to dismiss where affirmative defense involved a question of fact). Defendants argue that where an affirmative defense appears on the face of the complaint, it may properly be raised in a Rule 12(b)(6) motion to dismiss, citing *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to

establish that ground, not on the nature of the ground in the abstract.").  In *Jones*, the

Supreme Court approvingly cited a Third Circuit opinion holding that "a complaint may

be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on

its face."  *Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir. 2001) (internal quotations

omitted) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and*

*Procedure*, § 1357, at 358-59 (2d ed. 1990)).

Here, Defendants argue that, by Plaintiffs' own allegations, Plaintiffs and the

putative class members paid the $100 fine and did not challenge the notices of violation.

Therefore, Defendants contend that their burden of proving their affirmative defenses has

been satisfied for them on the face of the Plaintiffs' Second Amended Complaint.

However, the Court need not decide whether questions of fact relating to Defendants'

affirmative defenses remain to be proved because Defendants' waiver and estoppel

arguments fail as applied here.

### a.    Waiver

First, Defendants argue that Plaintiffs waived all of their constitutional claims

because, by paying the $100 fines instead of challenging the citations, they failed to assert

their constitutional claims at the earliest possible opportunity.  "The critical question in

determining whether waiver occurs is whether the party affected had a reasonable

opportunity to raise the unconstitutional act or statute by timely asserting the claim before

a court of law."  *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 225 (Mo. 1998)

(citation omitted).  As Plaintiffs point out, this Court has applied a two-part test to answer

that critical waiver question in the context of an administrative hearing: (1) whether Defendants have shown that the administrative hearing examiner had jurisdiction to hear Plaintiffs' constitutional claims, *see id.*, and (2) whether Defendants have shown that the constitutional claims could have been considered by the hearing examiner in Plaintiffs' case. *Doran v. Mo. Dep't of Soc. Servs.*, No. 07-CV-04158-NKL, 2008 WL 4151617, at *7 (W.D. Mo. Sept. 2, 2008). As a statutory creation, if an administrative hearing examiner is to have jurisdiction over Plaintiffs' constitutional claims, such jurisdiction must be granted by statute. *See Hunt v. Laclede Gas Co.*, 869 S.W.2d 770, 773 (Mo. Ct. App. 2001); *see also Carr v. N. Kan. City Bev. Co.*, 49 S.W.3d 205, 207 (Mo. Ct. App. 2001).

Here, Defendants argue that it would have been possible for Plaintiffs to assert their constitutional claims on appeal from the hearing examiner's decision. However, Plaintiffs never appeared at any forum in the first place in which they could have waived their constitutional claims. After all, in Missouri, the waiver doctrine ensures that "[a] party may not wait until he has lost the case and then, in contravention of a statute and the Constitution itself and to the cluttering up and confusion of the Courts, pick and choose his appellate forum by a belated constitutional question dragged by its very heels into the case." *Duncan v. Mo. Bd. for Architects, Prof. Eng'rs & Land Surveyors*, 744 S.W.2d 524, 531 (Mo. Ct. App. E.D. 1988) (quoting *Deiner v. Sutermeister*, 266 Mo. 505, 178 S.W. 757 (1915)). Plaintiffs did not wait until they lost the case and then attempt to pick and choose their appellate forum to introduce a belated constitutional question.

Furthermore, even had Plaintiffs challenged their citations, they would have appeared before a hearing examiner established by § 106-161 – an ordinance which does not grant jurisdiction to hear constitutional claims. Section 106-161 of the City of Springfield Code provides, in relevant part, only that the hearing examiner "shall take evidence and determine if the facts support a finding of a violation." Therefore, Defendants have failed to show that the administrative hearing examiner had jurisdiction to hear Plaintiffs' constitutional claims and that those constitutional claims could have been considered by the hearing examiner in Plaintiffs' case.

### b.    Estoppel

Second, Defendants argue that Plaintiffs are now estopped from asserting their constitutional claims because, by voluntarily paying the $100 fines, they accepted the findings of the notices of violation. Defendants cite only *Daugherty* for the proposition that while an invalid judgment neither binds nor bars anyone, "a party to such a judgment may voluntarily perform it by paying the amount adjudged against him and, when paid, no inquiry will be made to the validity of the judgment . . . and [the payor can] thereby estop himself from questioning the decree." *Daugherty*, 969 S.W.2d at 225. However, *Daugherty* dealt only with a class of parties to a void judgment – parties that had appeared before a family court commissioner and failed to assert their constitutional claims there or on appeal. *Daugherty* refers to a party to a "judgment" who pays the amount "adjudged against him." *Id.*

Here again, Plaintiffs have never appeared before any adjudicator who might have

heard their constitutional claims or adjudged against them. Under "the complementary doctrines of waiver and estoppel," just as Plaintiffs cannot be said to have "waived any objection to the [hearing examiner's] authority, findings, and legal conclusions," nor can Plaintiffs – not having "assumed the benefits or burdens of such 'judgment'" – be said to be "estopped from attacking it." *Id.* at 224-25.

In sum, although relevant to Plaintiffs' standing to challenge the specific procedures they declined to use, *see infra* Part II.B.2.a.1, the fact that Plaintiffs paid the $100 fines before contesting the citations does not act as a bar to all potential constitutional claims under the doctrines of waiver or estoppel.

## 2. Plaintiffs' § 1983 Claims

In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that, while acting under color of state law, Defendants City of Springfield and Lasercraft deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Cook v. City of Bella Villa*, 582 F.3d 840, 848 (8th Cir. 2009). Plaintiffs' Count IV alleges that Defendant City of Springfield, acting under color of state law, violated Plaintiffs' First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, as well as their privileges and immunities under Article IV of the U.S. Constitution. Count VIII alleges that Defendant Lasercraft, acting under color of state law, violated Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights, as well as their privileges and immunities under Article IV.

### a. Fourteenth Amendment Due Process Claims

Plaintiffs' Second Amended Complaint asserts that Defendants City of Springfield and Lasercraft have denied Plaintiffs procedural and substantive due process. [Doc. # 25 at ¶¶ 63, 134.]

### (1)    Procedural Due Process

Courts evaluating automated traffic ordinances similar to that of the City of Springfield have found that an administrative scheme provides constitutionally adequate process. *See*, *e.g.*, *Mendenhall v. City of Akron*, No. 09-3061, 2010 WL 1172474 (6th Cir. Mar. 29, 2010); *Ware v. Lafayette City-Parish Consol. Gov't*, Civil Action No. 08-0218, 2009 WL 5876275, at *6-*11 (W.D. La. 2009). However, the Court need not rule upon the constitutionality of the City of Springfield's procedures because Plaintiffs do not have standing to challenge the procedures they declined to use.

Defendants cite two district court cases in which the plaintiffs failed to contest traffic violations and instead opted to pay the fine. *Shavitz v. City of High Point*, 270 F. Supp. 2d 702 (M.D. N.C. 2003); *Van Harken v. City of Chicago*, 906 F. Supp. 1182 (N.D. Ill. 1995). While Defendants seek to draw from these cases a broader conclusion barring all of Plaintiffs' constitutional claims under their affirmative defenses of waiver and estoppel, the district courts they cite ruled only that the plaintiffs had no standing to claim that the unused procedures violated their due process rights. *Shavitz*, 270 F. Supp. 2d at 710; *Van Harken*, 906 F. Supp. at 1187-88. Regardless of Defendants' argument, this Court lacks jurisdiction in the absence of a live case or controversy. *See Lujan v. Defenders of Wildlife*, 504, U.S. 555, 560 (1992). As the Eighth Circuit has held, "[a]

federal court bears the burden of examining standing at all stages of litigation, even if the parties do not raise the issue themselves." *Harmon v. City of Kansas City, Mo.*, 197 F.3d 321, 327 (8th Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)); *see also Nolles v. State Comm. for Reorg. of Sch. Dists.*, 524 F.3d 892, 897-98 (8th Cir. 2008) (*sua sponte* dismissing appeal of procedural and substantive due process claims on standing grounds).

In *Van Harken*, a § 1983 suit alleging that a City of Chicago ordinance violated due process, Chicago argued that the certified class should not include persons who had paid rather than contest their parking tickets because they lacked standing. *Van Harken*, 906 F. Supp. at 1187. The district court agreed, expressly excluding from the class persons who paid their parking tickets without requesting a hearing. *Id.* at 1188. Even more recently, in a case involving red light cameras, the district court in *Shavitz* held that a plaintiff who paid a $50 fine instead of requesting a hearing did not have standing to challenge the city and its private contractor "because he has failed to show 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct . . . and that the injury is likely to be redressed by a favorable decision . . . .'" *Shavitz*, 270 F. Supp. 2d at 710 (quoting *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)).

> Much like the plaintiff in a similar district court case, Mr. Shavitz "cannot trace any deprivation or threatened deprivation of property to any of the adjudicative procedures (as outlined in both the ordinance and the enabling statute) that he questions because he never made use of them."

*Id.* (quoting *Walter v. City of Chicago*, No. 91 C 6333, 1992 WL 88457, at *3 (N.D. Ill. April 27, 1992)).

*Shavitz, Van Harken,* and *Walter* chose to "analyze the issue according to the more modern doctrine of standing, rather than the older, but seemingly no less applicable notion of waiver" of procedural due process claims. *Id.* at 711 n.8. The Eighth Circuit analyzed a slightly distinguishable issue according to the doctrine of waiver in the context of an employment termination case. *Krentz v. Robertson Fire Protection Dist.*, 228 F.3d 897 (8th Cir. 2000) ("[A]n employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state."). Regardless of whether analyzed through the doctrines of standing or waiver of procedural due process claims, "the basic reasoning is the same: Plaintiff has not taken advantage of the procedural processes offered to him, therefore he has not been harmed one way or another by such processes and, accordingly, cannot challenge them on due process grounds." *Shavitz*, 270 F. Supp. 2d at 711 n.8.

Here, therefore, under either a standing or waiver theory, Plaintiffs cannot challenge on due process grounds the procedures they opted not to use. Given the procedural posture of this case, the Court declines to exercise jurisdiction in the absence of a live claim or controversy. Plaintiffs have no standing to challenge the administrative procedures under § 106-161 because they cannot trace any deprivation or threatened deprivation of property to any of that ordinance's adjudicative procedures, having declined to avail themselves of any such procedures. It is implausible that § 106-161

12

could have denied these Plaintiffs, or anyone within this class, procedural due process.

### (2)    Substantive Due Process

Plaintiffs also fail to state a plausible claim for relief with regard to substantive due process.  Under the substantive due process doctrine, only fundamental rights qualify for heightened scrutiny – i.e., rights which are "deeply rooted in this Nation's history and tradition."  *Washington v. Glucksberg*, 539 U.S. 702, 721 (2003) (citation omitted).  A court examining the validity of a social or economic measure, such as § 106-161 of the Springfield Municipal Code, need only decide whether it is rationally related to a legitimate government interest.  *See*, *e.g.*, *Concrete Pipe Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 637 (1993); *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 84 (1978).  The court in *Shavitz* had no problem finding that red light camera legislation satisfied "this lenient test."  *Shavitz*, 270 F. Supp. 2d at 709 n.6.

The freedom to run a red light is not a fundamental right that is deeply rooted in this Nation's history and tradition.  Under the lenient rational basis test, the City of Springfield's red light camera ordinance is rationally related to the legitimate government interest in public safety.  Clearly, a legislative body could find that improved surveillance and enforcement of red light violations would result in fewer accidents.

The mere fact that the Missouri Supreme Court in *Belt* found that the City of Springfield ordinance's administrative hearing scheme violated a Missouri statute does not alter the substantive due process analysis.  The due process clause does not require a

state to implement its own laws correctly, nor does the Constitution insist that a local government be correct in its interpretation of what is permissible under state law. *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (citing *Gosnell v. City of Troy, Ill.*, 59 F.3d 654, 658 (7th Cir. 1995)). Thus, Plaintiffs' attempt to convert violations of state law into federal due process claims improperly bootstraps state law into the U.S. Constitution. It is implausible that § 106-161 could have denied Plaintiffs substantive due process.

### b. Fourteenth Amendment Equal Protection Claim

Plaintiffs' Second Amended Complaint also asserts that Defendant City of Springfield denied Plaintiffs the equal protection of the law. [Doc. # 25 at ¶ 63.] Plaintiffs allege that Defendant City of Springfield denied Plaintiffs the equal protection of the law because individuals accused of violating other provisions of the City of Springfield Missouri Municipal Code receive Sixth Amendment protections, including trial by jury. [Doc. # 25 at ¶ 63.] However, the protections of the Sixth Amendment apply only to criminal defendants and the City of Springfield ordinance at issue is civil in nature, *see infra* Part II.B.2.c.

In addition, there is no suspect classification at issue because § 106-161 only distinguishes between individuals whose vehicles have been photographed violating the red light ordinance and those whose vehicles have not been photographed violating the red light ordinance. Furthermore, as mentioned above, there is no fundamental right to run red lights. Therefore, the Court must analyze Plaintiffs' Equal Protection Clause

claim under the rational basis test.

As the district court in *Shavitz* also found with respect to an Equal Protection Clause claim, a red light camera ordinance is rationally related to the legitimate government interest in public safety. *Shavitz*, 270 F. Supp. 2d at 723 ("Plaintiff falls far short of surmounting the formidable presumption of validity bestowed upon the . . . ordinance by the rational basis review standard."). Clearly, a legislative body could find that improved surveillance and enforcement of red light violations would result in fewer accidents. It is implausible that § 106-161 could have denied Plaintiffs the equal protection of the law, and Plaintiffs have failed to state a claim for which relief can be granted under the Equal Protection Clause of the Fourteenth Amendment.

### c.      Fifth, Sixth, and Eighth Amendment Claims

Plaintiffs allege that Defendant City of Springfield violated Plaintiffs' Fifth, Sixth, and Eighth Amendment rights by attempting to disguise a criminal ordinance as a civil ordinance, subjecting them to double jeopardy, and by denying them a speedy and public trial, a trial by jury, and the right to confront witnesses against them. [Doc. # 25 at ¶¶ 63, 64.] In the alternative, Plaintiffs allege that § 106-161 is civil in nature and enabled Defendants City of Springfield and Lasercraft to effect an unconstitutional taking of their property without just compensation. [Doc. # 25 at ¶ 63.]

First, Plaintiffs argue that § 106-161 is criminal in nature, which would entitle them to enhanced procedural protections under the U.S. Constitution. According to the Supreme Court:

> The Constitution provides for a series of protections of the unadorned
> liberty interest at stake in criminal proceedings. These express protections
> include the Fifth Amendment's guarantee of grand jury indictment, and
> protections against double jeopardy and self-incrimination; the Sixth
> Amendment's guarantees of a speedy and public jury trial, of the ability to
> confront witnesses, and of compulsory process and assistance of counsel;
> and the Eighth Amendment's protections against excessive bail and fines,
> and against cruel and unusual punishment. . . . These protections are not
> available to the typical civil litigant. Even where the interest in a civil suit
> has been labeled "fundamental," as with the interest in parental termination
> suits, the protections extended pale by comparison.

*M.L.B. v. S.L.J.*, 519, U.S. 102, 139-40 (1996). As stated above, the interest here in

violating a red light is not "fundamental." Therefore, unless § 106-161 is criminal in

nature, all of Plaintiffs' Fifth, Sixth, and Eighth Amendment claims must fail facially,

with the exception of the Fifth Amendment Takings Clause claim.

According to the Supreme Court, in determining whether legislation is civil or

criminal, if the intention of the legislature was to impose punishment, that ends the

inquiry. *Smith v. Doe*, 538 U.S. 84, 91 (2003). However, if the court interprets the

measure as intending to enact a regulatory scheme that is civil and nonpunitive, it must

further examine whether the statutory scheme is so punitive either in purpose or effect as

to negate the legislative body's intention to deem it civil. *Id.* Finally, "only the clearest

proof will suffice to override legislative intent and transform what has been denominated

a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100 (1997)

(internal quotations omitted).

Courts evaluating automated traffic ordinances similar to that of Defendant City of

Springfield have uniformly found them to be civil in nature and, thus, that Constitutional

protections for criminal defendants do not apply.  *See*, *e.g.*, *Kilper v. City of Arnold, Mo.*,

No. 4:08cv0267 TCM, 2009 WL 2208404, at *13-*19 (E.D. Mo. 2009); *Ware*, 2009 WL

5876275, at *2; *Mendenhall*, 2008 WL 7484179, at *2-*5; *Shavitz*, 270 F. Supp. 2d at

716.  While these cases tend to focus on the express language of the ordinances as the

clearest indication of an intent to create a civil proceeding or penalty, even in the absence

of express language, at least one court concluded that a city intended its red light camera

ordinance to be civil in nature.  *Kilper*, 2009 WL 2208404, at *14.

   *Kilper* found only the slightest indication of an intent to establish a civil penalty –

the word "(fine)" had been added after the word "penalty," indicating an intent to limit to

a fine the penalty for violation of the red light ordinance.  *Id.*  Given this indication of a

civil intention, to determine whether the statutory scheme was clearly so punitive as to

transform what was intended as a civil remedy into a criminal penalty, *Kilper* applied the

Supreme Court's *Mendoza-Martinez* factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2)
> whether it has historically been regarded as a punishment; (3) whether it
> comes into play only on a finding of *scienter*; (4) whether its operation will
> promote the traditional aims of punishment – retribution and deterrence; (5)
> whether the behavior to which it applies is already a crime; (6) whether an
> alternative purpose to which it may rationally be connected is assignable for
> it; and (7) whether it appears excessive in relation to the alternative purpose
> assigned.

*Hudson*, 522 U.S. at 99-100 (internal quotations omitted) (citing *Kennedy v. Mendoza-

Martinez*, 372 U.S. 144, 168 (1963)).  Considering the *Mendoza-Martinez* factors, *Kilper*

found that the plaintiffs had not shown, much less by the clearest proof, that the effects or

purpose of the red light camera ordinance negated the City of Arnold's intention to create a civil ordinance. *Kilper*, 2009 WL 2208404, at *19.

Here, unlike in *Kilper*, there is express language indicating that the City of Springfield intended § 106-161 – operating in combination with § 106-155(5), which generally prohibits red light violations – to be civil in nature. At a meeting on January 29, 2007, the City of Springfield signed into law Council Bill No. 2007-021, amending § 106-155(5) of the Springfield Municipal Code by adding the following language:

> If a violation of this section is enforced through the use of an automated red light traffic enforcement system, then the penalty shall be punishable by a fine in an amount not less than One Hundred Dollars ($100.00) and shall be a civil, non-point penalty, and shall not be punishable under Section 1-7 of the City Code [allowing for a maximum fine of $1,000 or imprisonment where no specific penalty is provided].

Plaintiffs' Second Amended Complaint alleges: "Between 2007 and 2010, Plaintiffs and class members incurred financial obligations to Defendant Springfield" via the red light cameras. [Doc. # 25 at ¶ 160.] Thus, during the period of time identified by Plaintiffs, there were only 29 days during which the City of Springfield Municipal Code did not expressly state that a violation of the ordinance enforced through the use of a red light camera "shall be a civil, non-point penalty, and shall not be punishable under Section 1-7 of the City Code."

Prior to the January 29, 2007 amendment, § 106-155(5) of the City of Springfield Municipal Code provided in full:

> The penalty for a violation of this section shall be as provided in Section 1-7 of the City Code, except that, upon conviction for a violation of the any

> [sic] of the provisions regarding steady red indications . . . the penalty shall
> be or include a fine in an amount not less than One Hundred Dollars
> ($100.00).

Plaintiffs' Second Amended Complaint alleges in fifteen separate paragraphs that Defendants forced Plaintiffs to pay $100 fines in connection with the alleged red light violations. [Doc. # 25 at ¶¶ 26, 29, 47, 90, 118-25, 154, 170.] The Second Amended Complaint mentions no other penalty imposed.

The Court finds that a mere $100 fine does not rise to the level of an intent to punish. To the contrary, the consistency of the $100 penalty both before and after the January 29, 2007 amendment indicates that the amendment clarified the ordinance's original civil intent. Therefore, the Court must look to the *Mendoza-Martinez* factors laid out by the Supreme Court to determine whether the City of Springfield ordinance was clearly so punitive as to transform what was intended as a civil remedy into a criminal penalty.

First, the Court must ask whether the sanction involves an affirmative disability or restraint. Plaintiffs' Second Amended Complaint alleges that § "106-161 imposes a sanction that constitutes an affirmative disability or restraint." [Doc. # 25 at ¶¶ 69, 139.] However, the ordinance does not impose a physical restraint but merely a monetary penalty. The penalty "does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Doe*, 538 U.S. at 86. "Monetary sanctions do not involve an affirmative disability or restraint." *Kilper*, 2009 WL 2208404, at *15 (citing *Hudson*, 522 U.S. at 104). Here, the civil, non-point penalty is a

mere $100 fine. Such a monetary sanction does not constitute an affirmative restraint or disability.

Second, the Court must ask whether the sanction imposed has historically been regarded as punishment. Plaintiffs' Second Amended Complaint alleges that the "punishment under Section 106-161 has historically been regarded as a punishment in that most red light violators have always received a monetary fine." [Doc. # 25 at ¶¶ 70, 140.] Money penalties have not historically been viewed as punishment. *Hudson*, 522 U.S. at 104; *see also Ward*, 448 U.S. at 256 (Blackmun, J., concurring) ("I conclude . . . that monetary assessments are traditionally a form of civil remedy . . . ."). A mere $100 "civil, non-point penalty" inflicts only a small punishment more akin to what has historically been considered a civil sanction. Therefore, the historic nature of the sanction does not help Plaintiffs in their attempt to prove that the ordinance is clearly so punitive as to undo its otherwise civil indications.

Third, the Court must ask whether the sanction comes into play only on a finding of scienter. Plaintiffs' Second Amended Complaint alleges that § "106-161 provides for defenses negating scienter." [Doc. # 25 at ¶¶ 71, 141.] Again, Plaintiffs' allegations are legally implausible. Scienter denotes actions taken "knowingly." *Shavitz*, 270 F. Supp. 2d at 714 (citing *Black's Law Dictionary* 1345 (6th ed. 1990)). As in *Shavitz*, a violation of the City of Springfield's red light ordinance does not require a finding of scienter, for no state-of-mind requirement is set out anywhere in the ordinance. For example, the primary operative clause of § 106-155 of the City of Springfield Municipal Code provides

20

only that "traffic facing a steady circular red signal alone shall stop at a clearly marked stop line . . . ." Under §§ 106-155 and 106-161, the civil, non-point penalty for a violation of the red light ordinance enforced through a red light camera is assessed without regard to the violator's knowledge or state of mind. There is no scienter requirement to be found in the ordinance.

Fourth, the Court must ask whether the operation of the sanction will promote the traditional aims of punishment-retribution and deterrence, as Plaintiffs' Second Amended Complaint claims that it does. [Doc. # 25 at ¶¶ 72, 142.] At best, as was found in the case of a similar red light camera ordinance, "this is the lone factor that cuts in favor of Plaintiff as to suggest that the ordinance is criminal in nature . . . ." *Shavitz*, 270 F. Supp. 2d at 715. The lack of a scienter requirement is evidence that the sanction is not intended to be retributive, *Kansas v. Hendricks*, 521 U.S. 346, 362 (1997), and "the mere presence of a [deterrent] purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" *Hudson*, 522 U.S. at 105 (quoting *United States v. Ursery*, 518 U.S. 267, 292 (1996)). Here, the presence of a deterrent purpose alone is insufficient to prove that the ordinance is clearly so punitive as to undo its otherwise civil indications.

Fifth, the Court must ask whether the behavior to which the sanction applies is already a crime, as Plaintiffs' Second Amended Complaint claims that it was. [Doc. # 25 at ¶¶ 73, 143.] Before January 29, 2007, under §§ 106-155, 1-7, and 106-161 of the City of Springfield Municipal Code, it was hypothetically possible that a violator of the red

light camera ordinance could have been fined as much as $1,000 or imprisoned. However, Plaintiffs allege only that they and the members of the putative class were fined $100, even before the January 29, 2007 amendment clarified that violations of the red light camera ordinance would always result in a $100 "civil, non-point penalty." Moreover, "the placement of criminal penalties in one statute and the placement of civil penalties in another statute enacted . . . later tends to dilute the force of the fifth *Mendoza-Martinez* criterion . . . ." *Ward*, 448 U.S. at 250. Therefore, this factor does not help Plaintiffs prove that the ordinance is clearly so punitive as to undo its otherwise civil indications.

Sixth, the Court must ask whether an alternative purpose to which the sanction may rationally be connected is assignable to it. Plaintiffs' Second Amended Complaint claims that there is "no alternative purpose to which the ordinance may rationally be connected other than penalizing red light violations." [Doc. # 25 at ¶¶ 74, 144.] The relevant question under the sixth *Mendoza-Martinez* factor is not what specific conduct was targeted, but rather whether such regulation aimed to accomplish a broader nonpunitive purpose. As the *Shavitz* court found, the primary purpose of a red light camera ordinance is to promote public safety. *Shavitz*, 270 F. Supp. 2d at 715. The Supreme Court has endorsed public safety as a legitimate nonpunitive purpose and found that a measure is "not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Doe*, 538 U.S. at 103. The use of red light cameras is rationally connected to the legitimate nonpunitive purpose of reducing traffic

22

accidents at traffic light intersections. *Kilper*, 2009 WL 2208404, at \*17. The presence of a legitimate nonpunitive purpose undermines Plaintiffs' argument that the ordinance is clearly so punitive as to undo its otherwise civil indications.

Finally, the Court must ask whether the sanction appears excessive in relation to the alternative purpose assigned. According to Plaintiffs, any "remedial or safety purpose is outweighed by the excessive fine imposed for the purported civil violation." [Doc. # 25 at ¶¶ 75, 145.] However, in *Van Harken*, the court found that $200 fines "can hardly be considered excessive" in relation to the alternative public safety purpose. *Van Harken*, 906 F. Supp. at 1191-92. Similarly, *Kilper* found that a fine of $94.50 was not excessive in relation to the public safety purpose of the red light camera ordinance in the City of Arnold, Missouri. *Kilper*, 2009 WL 2208404, at \*17. Here too, a $100 fine is not excessive in relation to the public safety purpose of the City of Springfield's red light camera ordinance.

In sum, the only *Mendoza-Martinez* factor providing any significant support to Plaintiffs' argument that the ordinance is criminal in nature is the fact that the fine has a deterrent purpose. However, the mere presence of a deterrent purpose is insufficient to render a sanction criminal, since deterrence may also serve civil purposes. *Hudson*, 522 U.S. at 105. The remaining *Mendoza-Martinez* factors confirm the Court's initial interpretation that the City of Springfield red light camera ordinance is civil in nature. As a matter of law, Plaintiffs cannot overcome the indications of a legislative intent that the ordinance be civil in nature, including the express language of § 106-155(5) stating that

23

violation of the ordinance "shall be a civil, non-point penalty, and shall not be punishable under Section 1-7 of the City Code."  As a civil ordinance, § 106-161 need not provide the heightened procedural protections required by the Fifth, Sixth, and Eighth Amendments of the U.S. Constitution.

In the alternative, Plaintiffs allege that § 106-161 is civil in nature and enabled Defendants City of Springfield and Lasercraft to effect an unconstitutional taking of their property without just compensation.  [Doc. # 25 at ¶ 63.]  The only conceivable Takings Clause theory is that the $100 fine itself constituted a taking of Plaintiffs' property without just compensation.  However, the $100 civil sanction was enforced only after notice and the opportunity for a hearing.  *See Shavitz*, 270 F. Supp. 2d at 719 n.15. Plaintiffs were deprived of their property not by the direct operation of a general regulation, but rather as a result of an individualized, quasi-judicial administrative proceeding.  As established above, this Court need not rule upon the constitutionality of the City of Springfield's procedures because Plaintiffs do not have standing to challenge the procedures they declined to use.

Even assuming the Takings Clause did apply to the City of Springfield ordinance, the Supreme Court "has examined the 'taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors – such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action – that have particular significance."  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495 (1987) (quoting *Kaiser Aetna*

24

*v. United States*, 444 U.S. 164, 175 (1979)).  Here, the economic impact of the regulation is minimal, there is no reasonable investment backed expectation to run red lights with impunity, and, because the City of Springfield has merely exercised its police power to protect public safety, the character of the government action leans heavily against finding a taking.  Here again, Plaintiffs' claim is implausible as a matter of law and must be dismissed.

### d.  Fourth Amendment Illegal Seizure Claim

Next, Plaintiffs allege that Defendants City of Springfield and Lasercraft unlawfully seized Plaintiffs' property in violation of the Fourth Amendment.  [Doc. # 25 at ¶¶ 63, 134.]  "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Mendenhall*, 466 U.S. 544, 553-54 (1980) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).  If anything, the red light cameras minimize the contact between the police and the citizenry by automating the process by which individuals receive notices of violation of red lights.  Additionally, individuals do not have a reasonable expectation of privacy when driving on public streets.

Here, Plaintiffs allege only that they received a notice of violation through the mail and then elected to pay a $100 fine rather than contest their liability.  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal quotations omitted). Based on the allegations in Plaintiffs' Second Amended Complaint, it is implausible that Defendants have violated Plaintiffs' Fourth Amendment rights.

### e. First Amendment Claims

### (1) First Amendment Access to Courts Claim

Plaintiffs also allege that Defendant City of Springfield violated Plaintiffs' First Amendment right of access to the courts. [Doc. # 25 at ¶ 63.] According to their Second Amended Complaint, Plaintiffs were denied access to the courts "because the administrative tribunal that was to hear their appeals had no authority under the city charter, under state law, or under the Missouri or United States Constitution." [Doc. # 25 at ¶ 79.] Here again, Plaintiffs improperly bootstrap state law – the holding in *Belt* that the City of Springfield ordinance violated a Missouri statute – into the U.S. Constitution.

The relevant legal issue is not the state law question decided in *Belt*, but rather whether Defendant City of Springfield acted with the intentional motivation or design to keep Plaintiffs out of court. *Morris v. City of Chillicothe*, 512 F.3d 1013 (8th Cir. 2008). "Most of the cases involving this right have arisen in the context of a prisoner's right of access to the courts" and make clear that "state officials may not take retaliatory action against an individual designed to either punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future." *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422 (8th Cir. 1986).

Unlike in *Harrison*, where the plaintiffs alleged in their complaint that the

defendants had conspired to force them to settle their lawsuit, here there is no factual allegation regarding any conspiracy to keep Plaintiffs out of court. Plaintiffs do allege that "Defendant Springfield classifies the red light camera tickets as administrative rule violations in an attempt to avoid individuals' right to access the courts . . . ." [Doc. # 25 at ¶ 25.] However, it is implausible that § 106-161 was designed to deny Plaintiffs access to the courts. The Missouri Administrative Procedure Act ("MAPA") specifically grants procedural rights and judicial review to parties to an administrative hearing. Mo. Rev. Stat. § 536.100 (2000). For example, Adolph Belt challenged his citation under § 106-161 and, consistent with the MAPA, was granted not only a contested administrative hearing but also judicial review of an adverse decision from that hearing. *Belt*, 307 S.W.3d at 651. Belt successfully pursued his claim to the highest court in the State of Missouri.

In sum, it is unreasonable to suggest that § 106-161 was designed to deny plaintiffs such as Belt access to the courts. Because of protections such as those provided by the MAPA – and, similarly, by the federal Administrative Procedure Act – courts do not find a First Amendment violation whenever a legislative body chooses to delegate quasi-judicial authority to an administrative agency. The factual allegations in Plaintiffs' Second Amended Complaint do not state a claim for relief.

### (2) First Amendment Free Speech Claim

Plaintiffs also allege that Defendant City of Springfield violated Plaintiffs' First Amendment right to free speech. [Doc. # 25 at ¶ 63.] Plaintiffs make no factual

allegations in their Second Amended Complaint sufficient to give the Court a hint as to their free speech legal theory. The Court assumes that Plaintiffs claim to have been denied free speech in connection with their right of access to the courts claim. Here again, the factual allegations in Plaintiffs' Second Amended Complaint are insufficient to state a free speech claim.

### f.      Privileges and Immunities Claim

Finally, Plaintiffs claim that Defendants City of Springfield and Lasercraft violated the Privileges and Immunities Clause of Article IV by favoring in-state residents over out-of-state residents – apparently because § 106-161 "requires out of state residents to return to Missouri to challenge their red light ticket where, in most cases, the price of gasoline to accomplish this exceeds the penalty of the ticket." [Doc. # 25 at ¶¶ 63, 93, 99, and 134.] Under this theory, nearly every traffic citation that can be challenged would be unconstitutional under the Privileges and Immunities Clause of Article IV. Here again, Plaintiffs fail to state in their Second Amended Complaint a plausible legal theory supported by sufficient factual allegations to raise a right to relief above the speculative level.

### C.      Section 2201 Request for Declaratory Judgment

Count V seeks a declaratory judgment under 28 U.S.C. § 2201 finding that § 106-161 violates all the rights alleged to have been violated in Count IV and that the ordinance is void for vagueness and violates the Dormant Commerce Clause. [Doc. # 25 at ¶¶ 96-100.] The federal courts' power to exercise jurisdiction over declaratory

judgment actions is not mandatory, but rather discretionary. *Aetna Cas. and Sur. Co. v. Jefferson Trust & Sav. Bank of Peoria*, 993 F.2d 1364, 1366 (8th Cir. 1993). The Court considers two factors in deciding whether to exercise its discretion to issue a declaratory judgment: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. *Alsager v. Dist. Court of Polk County, Iowa (Juvenile Division)*, 518 F.2d 1160, 1163-64 (8th Cir. 1975). Moreover, where government action is involved, courts should not use their discretion to issue a declaratory judgment unless the need for such relief is clear, not remote or speculative. *Barnes, v. Kan. City Office of Fed. Bureau of Investigation*, 185 F.2d 409, 411 (8th Cir. 1951) (citing *Eccles v. Peoples Bank*, 333 U.S. 426 (1948)).

Here, government action is involved and the Court should not exercise its discretion to issue a declaratory judgment because the need for such relief is not clear. Because Plaintiffs' request for a declaratory judgment under § 2201 is almost entirely duplicative of the allegations in its § 1983 claim, the exercise of the Court's discretion would serve no additional purpose in clarifying the parties' legal relations or terminating the suit. Therefore, the Court declines to exercise its discretion by issuing a declaratory judgment.

### D. Claims under the Fair Debt Collection Practices Act

Count IX claims that Defendant Lasercraft was a "debt collector" as defined in 15 U.S.C. § 1692(a)(6), and that Lasercraft violated § 1692(d) and (e) by mailing Plaintiffs

notices of violation – the natural consequence of which was to harass, oppress, or abuse – and using false, deceptive, and misleading means to collect the debt.  [Doc. # 25 at ¶¶ 157-176.]  Section 1692, known as the Fair Debt Collection Practices Act ("FDCPA"), applies only to the collection of a "debt," which it defines as follows:

> [A]ny obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692(a)(5).  "By the plain terms of the statute, not all obligations to pay are considered 'debts' subject to the FDCPA." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370-71 (11th Cir. 1998).   A debt under the FDCPA can only arise as a result of a "consensual transaction for the purchase of consumer goods or services." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997); *see also Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (stating that the FDCPA "limits 'debt' to consumer debt").  In *Graham v. ACS State & Local Solutions, Inc.*, the district court rejected the claim that parking tickets gave rise to a debt under the FDCPA, finding that a fine for a parking violation was not a consensual or consumer transaction.  *Graham v. ACS State & Local Solutions, Inc.*, Civ. No. 06-2708 (JNE/JJG), 2006 WL 2911780, at *2 (D. Minn. Oct. 10, 2006) ("[T]he Court fails to see how the receipt of a parking ticket, which is a legally imposed fine for parking one's vehicle in an unauthorized location, can constitute a consumer transaction.").

In response, Plaintiffs cite only *Piper v. Portnoff Law Assocs., Ltd.*, a case that is

distinguishable from the facts presented here. In *Piper*, the court found that the FDCPA did apply to a law firm that attempted to collect delinquent water and sewage debts for a municipality. *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 229 (3d Cir. 2005). Those assessments, however, arose from consensual transactions entered into by consumers of water and sewage services.

Here, in contrast, Plaintiffs were not acting as consumers and the imposition of the $100 fines was not consensual. Monetary obligations arising out of red light tickets are analogous to the parking tickets in *Graham*. Because tickets for traffic violations do not constitute obligations arising from consensual or consumer transactions, the $100 fines at issue are not debts under the FDCPA, and that federal statute does not apply here. Again, Plaintiffs fail to state a claim for which relief can be granted.

### E. Supplemental Jurisdiction Over Remaining State Law Claims

Plaintiffs' remaining claims against Defendants City of Springfield and Lasercraft are based on state law. Under 28 U.S.C. § 1367, federal courts may decline to exercise supplemental jurisdiction over state law claims if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367 (c).

Having dismissed all the federal claims over which it had original jurisdiction, and with reason to believe that at least some of Plaintiffs' more than a dozen state law claims

are novel, the Court declines to exercise supplemental jurisdiction under § 1367.  *See Kilper*, 2009 WL 2208404, at *22.  Plaintiffs do not allege, and the Court does not find, diversity jurisdiction over Plaintiffs' state law claims.

**III.    Conclusion**

Accordingly, it is hereby ORDERED that Motions to Dismiss filed by Defendant City of Springfield [Doc. # 34] and Defendant Lasercraft [Doc. # 36] are GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  September 3, 2010
Jefferson City, Missouri